Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/13/2018 08:34 AM CDT

JENNIFER WESTWOOD, APPELLANT, V.
CHERYL A. DARNELL, APPELLEE.

___ N.W.2d ___

Filed April 13, 2018.    No. S-17-538.

1. **Divorce: Child Custody: Child Support: Property Division: Alimony: Attorney Fees: Appeal and Error.** In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees.

2. **Evidence: Appeal and Error.** In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue.

3. ____: ____. When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another.

4. **Judges: Words and Phrases.** A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.

5. **Property Division.** The purpose of a property division is to distribute the marital assets equitably between the parties.

6. ____. Under Neb. Rev. Stat. § 42-365 (Reissue 2016), the equitable division of property is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets and marital liabilities of the parties. The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365.

7. ____. The ultimate test in determining the appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case.

8. **Property Division: Proof.** The burden of proof to show that property is nonmarital remains with the person making the claim.

9. **Divorce: Property Division.** As a general rule, all property accumulated and acquired by either party during the marriage is part of the marital estate, unless it falls within an exception to the general rule.

10. ____: ____. Exceptions to the rule that all property accumulated and acquired during the marriage is marital property includes property accumulated and acquired through gift or inheritance.

11. **Divorce: Property Division: Taxes.** Ordinarily, a trial court in Nebraska should not consider the speculative tax consequences of its distribution orders unless it has ordered the immediate liquidation or sale of an asset or a party must sell an asset to satisfy a monetary judgment.

Appeal from the District Court for Lancaster County: Lori A. Maret, Judge. Affirmed.

Elaine A. Waggoner, of Waggoner Law Office, for appellant.

B. Gail Steen, of Steen Law Office, for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, and Funke, JJ., and Steinke, District Judge.

Heavican, C.J.

## INTRODUCTION

The district court entered a decree dissolving the marriage of Jennifer Westwood and Cheryl A. Darnell and dividing their marital estate. Westwood appeals. We affirm.

## BACKGROUND

Westwood and Darnell were married in Vermont in 2011. No children were born of the marriage. The parties separated on or about June 25, 2015. The district court's decree awarded each party her personal property, automobile, and retirement account. Westwood was ordered to pay an equalization payment to Darnell in the amount of $3,755.67.

The record indicates that Westwood and Darnell were both employed by the Nebraska Department of Correctional

Services. Both earned comparable salaries and had premarital retirement accounts to which they continued to contribute after they married. Household expenses were split equally.

Westwood quit her job in March 2015. Shortly thereafter, she withdrew $75,393.04 from her retirement account. After taxes, penalties, and fees, the sum of $51,999.99 was deposited in the parties' joint bank account. The couple then paid off outstanding marital debts and deposited some of the money in a new retirement account. Among the bills paid with the proceeds from the withdrawal were the outstanding balances of $20,849.73 for Darnell's vehicle and $12,855.89 for Westwood's vehicle.

When the parties separated in June 2015, they had no marital debt except the mortgage on their home and the balance on a credit card which had been used to purchase items for household improvements. Each party also had a vehicle of somewhat similar value, a retirement account, and jointly held checking and savings accounts.

The parties purchased a home together, though only Westwood was listed on the deed. The marital home was sold in August 2015. Westwood kept the $11,150.81 proceeds from the sale of the home. At some point prior to entry of the decree, Westwood paid Darnell $1,250.

Westwood filed for divorce in December 2015. Following a trial, the district court awarded each party the personal property and automobile in her possession, her separate retirement account, and any bank accounts in her own name. Westwood was ordered to make an equalization payment to Darnell of $3,755.67.

Westwood appeals.

## ASSIGNMENTS OF ERROR

On appeal, Westwood assigns that the district court erred in its division of the marital property by (1) not classifying as separate property the proceeds from Westwood's withdrawal

of $51,999.99 from her retirement account; (2) failing to consider that Darnell was unjustly enriched by payment of the loan on her vehicle; and (3) failing to consider that Darnell refused to file taxes jointly, thus refusing to share in the tax burden imposed upon the withdrawal of Westwood's retirement funds.

## STANDARD OF REVIEW

[1] In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees.[1]

[2,3] In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue.[2] However, when evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another.[3]

[4] A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[4]

## ANALYSIS

In her first assignment of error, Westwood asserts that the district court erred in treating as marital property the funds Westwood withdrew from her retirement account.

[1] *Osantowski v. Osantowski*, 298 Neb. 339, 904 N.W.2d 251 (2017).

[2] *Id.*

[3] *Id.*

[4] *Id.*

[5-7] The purpose of a property division is to distribute the marital assets equitably between the parties.[5] Under § 42-365, the equitable division of property is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets and marital liabilities of the parties. The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365.[6] The ultimate test in determining the appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case.[7]

[8-10] The burden of proof to show that property is nonmarital remains with the person making the claim.[8] As a general rule, all property accumulated and acquired by either party during the marriage is part of the marital estate, unless it falls within an exception to the general rule.[9] Such exceptions include property accumulated and acquired through gift or inheritance.[10]

Westwood relies on *Lisec v. Lisec*[11] to support her contention that the money she withdrew from her retirement account maintained its status as her separate property. In *Lisec*, the wife argued that she was entitled to proceeds received from the sale of the marital home, because she provided the downpayment for the home from nonmarital funds. Specifically, the wife had received a gift of money from her mother, which she deposited into the parties' joint checking account and then used to make

---

[5] Neb. Rev. Stat. § 42-365 (Reissue 2016).

[6] *Gangwish v. Gangwish*, 267 Neb. 901, 678 N.W.2d 503 (2004).

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Lisec v. Lisec*, 24 Neb. App. 572, 894 N.W.2d 350 (2017).

the downpayment on the home. The wife argued that these funds retained their identity as gifted funds.

The Nebraska Court of Appeals affirmed the district court's conclusion that the proceeds should be considered marital property, noting that the home was placed in both parties' names and that the settlement agreement the parties entered explicitly provided that jointly titled property was to be considered marital property.

Westwood argues that the Court of Appeals' decision was premised on the settlement agreement; otherwise, the house proceeds would have been considered nonmarital property. Thus, in her case, because there was not a settlement agreement providing as much with regard to these retirement funds, the funds would be considered nonmarital even after their deposit in the parties' joint account.

Westwood's contention with respect to the funds withdrawn from her retirement account is without merit. As an initial matter, *Lisec* is inapposite. Gifts and inheritances, even when received during the marriage, are presumed to be nonmarital. But retirement funds are not. Rather, retirement benefits earned during a parties' marriage are considered to be marital property; only those benefits earned prior to marriage would be considered to be nonmarital.[12] Westwood provides no authority to support the contention that retirement funds are converted into separate property after being withdrawn from a retirement account.

The burden is on Westwood to show that the funds in question are nonmarital. She has not met this burden. As noted, Westwood directs us to no authority suggesting that such funds are presumed to be nonmarital. Nor did Westwood present sufficient evidence to show that the funds withdrawn were her nonmarital property earned prior to marriage and not benefits earned during the marriage. Finally, the funds

---

[12] *Lorenzen v. Lorenzen*, 294 Neb. 204, 883 N.W.2d 292 (2016).

in question were withdrawn from Westwood's retirement account, placed into the parties' joint checking account, and used to pay marital debts. This supports the conclusion that the funds were considered marital property. Westwood's first assignment of error is without merit.

In her second assignment of error, Westwood argues that the district court erred in not finding that Darnell was unjustly enriched by having her automobile loan paid off using the funds withdrawn from Westwood's retirement account.

After clarifying Westwood's contention during the oral argument for this appeal, we observe that the term "unjust enrichment" is used here in a colloquial sense: Westwood simply argues that the equities of this situation demand that the retirement proceeds be treated as separate property. And we have concluded that the burden to show that the funds were nonmarital was on Westwood and that she failed to meet this burden. As such, there is no merit to this assignment of error.

In her third and final assignment of error, Westwood contends that the district court erred in not considering that Darnell refused to file joint tax returns when dividing the marital estate. Westwood contends that a joint filing would have shifted the tax burden as to the withdrawal of funds from her retirement account.

[11] Ordinarily, a trial court in Nebraska should not consider the speculative tax consequences of its distribution orders unless it has ordered the immediate liquidation or sale of an asset or a party must sell an asset to satisfy a monetary judgment.[13] In *Bock v. Dalbey*,[14] we were faced with the questions of (1) whether a district court can consider the tax consequences of one party's refusal to file a joint return in dividing the marital estate, and (2) whether it has discretion

---

[13] *Bock v. Dalbey*, 283 Neb. 994, 815 N.W.2d 530 (2012).

[14] *Id.*

to order the parties to file a joint return to preserve assets for the marital estate or to equalize its division of the estate. We generally held that a district court does not have discretion to order parties to file a joint tax return. We further noted:

Married individuals can elect whether to file a joint or separate return. For joint returns, the federal government taxes the income of a married couple in the aggregate. Filing jointly generally, but not always, produces substantial tax savings. But a "[couple] filing a joint return are jointly and severally liable for all tax for the taxable year (not merely the amount shown on the return), including interest, additions for negligence, and fraud penalties if applicable." The right of election under the federal tax code and the possible exposure to liability have prompted several courts to hold that a trial court cannot order a party to file a joint return.

. . . .

Here, the statutory remedy is found in . . . § 42-365 . . . . This statute authorizes a trial court to equitably distribute the marital estate according to what is fair and reasonable under the circumstances. Because § 42-365 is broad in its scope, we agree with the decisions of courts that hold a trial court may adjust its equitable division of the marital estate to account for the tax consequences of filing separate returns.

Therefore, under § 42-365, we hold that if a party seeking an equitable adjustment presents the court with the tax disadvantages of filing separate returns, a trial court may consider a party's unreasonable refusal to file a joint return. Evidence of a tax disadvantage would normally include the parties' calculated joint and separate returns for comparison.[15]

---

[15] *Id.* at 996-97, 1001, 815 N.W.2d at 533, 536.

We do not opine today on whether evidence other than a completed joint tax return could serve as sufficient evidence of a tax disadvantage. In this instance, Westwood has failed to introduce any evidence, apart from her and Darnell's separate tax returns and her testimony that the tax consequence would have been different, to support her contention regarding the consequences of a joint filing. Westwood's third and final assignment of error is without merit.

## CONCLUSION

The decision of the district court is affirmed.

AFFIRMED.

Wright, J., not participating.